# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARRYL BLALOCK,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>Defendant. | CASE NO. 4:16-cv-00288-GBC<br><br>(MAGISTRATE JUDGE COHN)<br><br>OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL |

## **OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL**

This matter is before the undersigned United States Magistrate Judge for decision. Plaintiff Darryl Blalock ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

## I. STANDARD OF REVIEW

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

---

[1] Effective January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Commissioner Berryhill is automatically substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount

of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

### A. Procedural History

On April 22, 2013, Plaintiff protectively filed an application for supplemental security income, and on May 5, 2013, Plaintiff filed an application for disability insurance benefits. (Tr. 22, 196-204). Plaintiff alleged disability as of April 1, 2009, due to bipolar disorder and problems with his spine and back. (Tr. 22, 78, 216). On September 15, 2014, a hearing was held before an Administrative Law Judge ("ALJ"). (Tr. 22, 34-77). On December 24, 2014, The ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. (Tr. 19-33). On March 25, 2016, the Appeals Council denied Plaintiff's request for review, and thus, the ALJ decision became the final decision of the Commissioner. (Tr. 1-6). This appeal followed.

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges the following two errors: (1) The ALJ erred in failing to give greater weight to the expert medical opinion of the treating psychiatrist, Dr. John Mallgren; and

(2) the ALJ failed to incorporate the findings of Dr. Mallgren into the residual functional capacity ("RFC"). (Pl. Br. at 4-5, Doc. 16).

A.     **ALJ Evaluation of Opinion of Dr. John Mallgren, D.O.**

Plaintiff states the ALJ erred by failing to give greater weight to the expert medical opinion of the treating psychiatrist, Dr. Mallgren. (Pl. Br. at 7). In the decision, the ALJ reviewed the record prior to evaluating the opinion of Dr. Mallgren:

> The claimant has the following severe impairments: degenerative disc disease, bipolar disorder, and post-traumatic stress disorder (PTSD). His history of drug and alcohol abuse (DAA) is non-severe. He quit drinking and he has not sustained any functional limitations secondary to his alcohol abuse prior to his alleged onset date …
>
> With regard to concentration, persistence, or pace, the claimant has moderate difficulties. He cannot pay attention for long. He does not handle stress or change in routine well. He forgets spoken instructions …
>
> At the hearing, the claimant testified to the following. He cannot remember. He can read but he forgets what he read as soon as he reads it. He cannot do simple math. He thinks he can make change. He finished the 4th grade. He lives in a house with his wife and daughter age 27. His daughter takes care of him. He cannot go out in public. He has no income. His wife works. He has been depressed and crying for 43 years …

In April 2013, he was seen at the Grand Lake Mental Health Center (Grand Lake MHC) for worry and concerns about his lack of income. He reported the following. He has been sober for nine months and denied current alcohol use. He was sexually abused by a neighbor for a number of years. He complained of back problems. His treatment goal was to utilize the clinic to reduce his bipolar and PTSD symptoms.

In July 2013, the claimant underwent a mental consultative examination. He alleged the following. He has anxiety, does not "go around" people, is violent and threatens to kill people, and at seven years old was sodomized and raped for two years. He has problems sleeping. Others are against him. On exam … [h]e was oriented to person and place, but identified the wrong month. His immediate memory was adequate. His short-term memory was impaired as he recalled 0/3 words after 5 minutes. His long term memory was also impaired as he was only [able] to identify Bush and Clinton as presidents since 1950. He was diagnosed with Bipolar disorder with psychotic features and PTSD. [On] [h]is follow-ups with Grand Lake MHC … in January 2014 and in April 2014, he reported no problems with anger …

(Tr. 24-27). Thus, the ALJ thoroughly reviewed the record, identified Plaintiff's severe impairments, and evaluated his mental health history and testimony. Id. Plaintiff does not dispute the ALJ's other findings as to the physical impairments, but he argues the ALJ erred by failing to give any weight to the expert medical opinion of the treating psychiatrist, Dr. Mallgren. (Pl. Br. at 7).

1.  **Weight to Dr. Mallgren's Opinion**

Plaintiff states the ALJ erred by failing to give any weight to Dr. Mallgren. (Pl. Br. at 7). The ALJ afforded no weight to Dr. Mallgren's opinion because he found the signature was illegible and the opinion was not supported by concurrent findings. (Tr. 27). Plaintiff concedes the signature is illegible but notes the handwritten name underneath appears to say Mallgren. (Pl. Br. at 7) (citing Tr. 396). Plaintiff states the cover letter and first line of the form identifies the opinion as Dr. Mallgren. (Pl. Br. at 7) (citing Tr. 394-95).

The disputed opinion contains a cover letter from Plaintiff's attorney's office, with Dr. Mallgren's name. (Tr. 394). The second page is titled "Medical Source Statement – Mental" with Dr. Mallgren's name handwritten under medical provider. (Tr. 395). The remainder of the form is checked box format, where the box of "moderate limitation" is selected for "understand and remember simple instructions, carry out simple instructions, ability to make judgments on simple work-related decisions, interact appropriately with the public, interact appropriately with supervisors, and interact appropriately with coworkers." (Tr. 395-96). The box of "marked limitation" is selected for "respond appropriately to usual work situations and to changes in a routine work setting and ability to complete a normal workday and work week without interruptions from psychologically-based symptoms; and to perform at a consistent pace without

5

an unreasonable number and length of rest periods." (Tr. 396). The Tenth Circuit has outlined the requirements for analyzing opinions of treating physicians:

> The standards an ALJ must follow when analyzing a treating doctor's opinion are settled. The ALJ first considers "whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." Pisciotta v. Astrue, 500 F.3d 1074, 1077 (10th Cir. 2007). If so, the ALJ must give the opinion controlling weight. Id. But if the ALJ decides "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." Id. Relevant factors the ALJ may consider are set forth in 20 C.F.R. § 404.1527(d). These factors include:
>
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).
>
> "Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons ... for the weight assigned to a treating physician's opinion." Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004). The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." Id. "If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Id.

Russell v. Astrue, 356 F. App'x 199, 201–02 (10th Cir. 2009) (unpublished).[2] By this well-settled standard, Dr. Mallgren's alleged opinion was not entitled to controlling weight. Moreover, the ALJ had sufficient reasons to decline to accord the opinion any weight. First, it appears Dr. Mallgren saw Plaintiff one time, which is insufficient to be considered a treating physician. The Northern District of Oklahoma has considered cases where a treating physician has only seen the plaintiff on one occasion:

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

> The treating physician rule, which gives controlling weight to a treating physician's opinion "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003 (quoting Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In Doyal, the Tenth Circuit quoted the Supreme Court's comments in Black & Decker Disability Plan v. Nord, 583 U.S. 822, 832, 123 S. Ct. 1965, 1971 (2003), "the assumption that the opinions of a treating physician warrant greater credit than the opinions of [other experts] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration." Doyal, 331 F.3d at 762. The Doyal Court concluded that a physician's opinion is not entitled to deferential treatment where the physician saw the claimant only once. Id. at 763. Based on the fact that Dr. Cates saw Plaintiff only one time before he signed the Mental Status Form, the court finds that the ALJ cannot be faulted for failing to consider the Mental Status Form as a treating physician's opinion.

Cheek v. Astrue, No. 11-CV-202-FHM, 2012 WL 2370358, at *3 (N.D. Okla. June 21, 2012). As in this case, the Court finds no error in the ALJ's failure to deem Dr. Mallgren a treating physician. Moreover, Dr. Mallgren's opinion is not "well supported by medically acceptable clinical and laboratory diagnostic techniques or consistent with the other substantial evidence in the record." Pisciotta, 500 F.3d at 1074. As Defendant points out, the opinion does not cite any clinical or laboratory diagnostic techniques. (See Tr. 395-96). In addition, the ALJ found the opinion was not supported by any concurrent findings. (Tr. 27).

Plaintiff contends the report of Minor Gordon, Ph.D., served as "concurrent findings" to support Dr. Mallgren's opinion. (Pl. Br. at 8). Plaintiff notes Dr. Gordon confirmed the diagnosis of bipolar disorder with psychotic features, severe, and assigned Plaintiff a GAF score of 50. (Pl. Br. at 8) (citing Tr. 353-55). However, a diagnosis for bipolar and a GAF score of 50 do not explain how Dr. Mallgren selected the box of "marked limitation" for respond appropriately to usual work situations and to changes in a routine work setting and ability to complete a normal workday and work week without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 396).

7

In Lopez v. Barnhart, the Tenth Circuit noted GAF scores "may indicate problems that do not necessarily relate to the ability to hold a job." 78 F. App'x 675, 678 (10th Cir. 2003). "Thus, standing alone, the GAF score does not evidence an impairment seriously interfering with [a] claimant's ability to work." Id. at 678. Moreover, as a Utah district court recently found:

> Plaintiff has not demonstrated that she was prejudiced by the ALJ's implicit findings. As the Tenth Circuit recently held in Keyes–Zachary v. Astrue, when the functional limitations expressed in a consultative examiner's opinion are not inconsistent with the functional limitations found in the ALJ's residual functional capacity assessment, any error by the ALJ in failing to specify the weight she assigned to those opinions is harmless. 695 F.3d 1156, 1163 (10th Cir. 2012) (holding that an ALJ's failure to assign weight to three different consultative examiner's opinions was harmless error). When an error is harmless, remands that would "needlessly prolong administrative proceedings" are not warranted. Wall v. Astrue, 561 F.3d 1048, 1069 (10th Cir. 2009). As such, the Court finds no basis to remand this case.

See Tyson v. Colvin, No. 2:11-CV-00415, 2013 WL 1729525, at *3 (D. Utah Mar. 4, 2013), report and recommendation adopted, No. 2:11-CV-415-DN-DBP, 2013 WL 1729521 (D. Utah Apr. 22, 2013). Similarly, in this case, Plaintiff has not demonstrated Dr. Gordon's opinion provided "concurrent findings" for Dr. Mallgren's check box form.

**B.     RFC and the Findings of Dr. Mallgren**

Plaintiff states the ALJ erred by failing to incorporate the findings of Dr. Mallgren into the RFC. (Pl. Br. at 5). In the decision, although the ALJ did not assign weight to Dr. Mallgren's opinion, the resulting RFC took Plaintiff's limitations into account by limiting him to simple tasks. "[T]he claimant has the residual functional capacity (RFC) to perform reduced light work … However, he is limited to simple, repetitive tasks, can relate to supervisors and coworkers only superficially and cannot [d]o work with the public." (Tr. 26).

Plaintiff contends the treatment records at Grand Lakes Mental Health Center documented consistent diagnoses and observations. (Pl. Br. at 9) (citing Tr. 318, 352, 371, 387, 401, 402 (bipolar diagnosis) Tr. 381 (depressed mood) Tr. 318, 352, 371, 387, 401, 402 (PTSD diagnosis)

8

Tr. 318, 352, 371, 387, 401, 402 (GAF scores of 44, 46, and 48). A district court case in the Western District of Oklahoma recently addressed weight to treatment notes within the Tenth Circuit:

> However, because these treatment notes "did not contain judgment about the nature and severity of ... limitations, or any information about what activities [she] could still perform," they are not "true medical opinions" and the ALJ had no obligation to assign them any weight. Cowan v. Astrue, 552 F.3d 1182, 1189 (10th Cir. 2008) (citing 20 C.F.R. § 404.1527(a)(2)); McDonald v. Astrue, 492 Fed. Appx. 875, 884 (10th Cir. 2012) (holding ALJ did not err in failing to assign weight to treatment notes that "reflect the clinicians' observations of symptoms, the nature of her impairments, and the clinicians' diagnoses" but "do not indicate any prognoses, provide opinions as to what [the claimant] could still do despite her impairments," because such treatment notes "do not qualify as medical opinions"); Velasquez v. Colvin, No. 14-CV-01690-RM, 2015 WL 7755966, at *11 (D. Colo. Dec. 1, 2015) ("Treatment notes − consisting of clinician's observations of Plaintiff's symptoms, the nature of his impairments, the clinicians' diagnoses and GAF scores that 'addressed in general terms the severity of Plaintiff's symptoms and functional difficulties' − do not qualify as medical opinions to which the ALJ is required to state the weight afforded."

See Gourley v. Colvin, No. 15-cv-880, 2016 WL 3579048, at *3 (W.D. Okla. Apr. 15, 2016), report and recommendation adopted, No. 15-cv-880, 2016 WL 3582158 (W.D. Okla. June 28, 2016). Similarly, in this case, the treatment notes were diagnoses rather than opinions as to what Plaintiff can do despite his impairments. Plaintiff states if there was any ambiguity or conflict regarding the RFC and the findings of Dr. Mallgren, the ALJ could have contacted the doctor for clarification under SSR 96-5p. (Pl. Br. at 10). However, it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ receives from the plaintiff's treating physician that triggers the duty. See White, 287 F.3d at 908. From the ALJ's decision, he was able to come to a conclusion with the evidence in the record, without the need to recontact Dr. Mallgren. (See Tr. 22-29).

Plaintiff contends the ALJ did not identify what part of the record contradicted the opinion of Dr. Mallgren. (Pl. Br. at 9). The ALJ referenced the state agency DDS opinions, which limited

Plaintiff to light, simple work, and the ALJ assessed the DDS opinions some weight. (Tr. 27). In addition, the ALJ rejected findings based on Plaintiff's own subjective complaints:

> The claimant is not fully credible. He claims that his mental problems alone preclude him from work independent of his physical problems. He claims to have memory problems and that he can pay attention only for 2 to 3 minutes, but he knew the names of all of the numerous medications he takes. His past history of DAA was what kept him from work, as his father had taught him how to drink from a young age. DAA is no longer an issue as he has repeated[ly] reported that he no longer drinks … The claimant's RFC has incorporated all of his credible limitations. He is able to perform light exertion work since he has a normal gait and negative straight leg raise. Secondary to his mental impairments, he is limited to simple work, to interact with coworkers only on a superficial basis, and is prohibited from dealing with the public.

(Tr. 27). Thus, the ALJ found Plaintiff's subjective complaints not fully credible, and the ALJ incorporated the credible physical and mental limitations into the RFC.

Therefore, the record provided substantial evidence to support the ALJ's decision. The Tenth Circuit has explained the standard for substantial evidence, and it is not the reviewing court's position to reweigh the evidence or substitute judgment.

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the decision provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform a significant number of jobs in the national economy.

**CONCLUSION**

For the reasons set forth above, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

SO ORDERED this 6th day of September, 2017.

                                          **Gerald B. Cohn**
                                          **United States Magistrate Judge**